UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH T. STAKEY,<br><br>                    Plaintiff,<br><br>v.<br><br>ROGER GOODMAN; JEFF FUNK;<br>NOEL BARLOW-HUST; and BREE<br>DERRICK,<br><br>                    Defendants. | Case No. 1:25-cv-00363-DCN<br><br>**INITIAL REVIEW ORDER BY<br>SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Joseph T. Stakey's Complaint because of Plaintiff's status as an inmate. Plaintiff has since filed an Amended Complaint.

A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

1.      **Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient

for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently held at the St. Anthony Work Camp, a minimum- and community-custody facility. Plaintiff is hearing-impaired and has a speech impediment.

Plaintiff was working at IDOC's Waste Water Treatment facility when, in September or October 2024, Defendant Goodman, apparently a supervisor at the Waste Water Treatment facility, began a campaign of verbal sexual harassment against Plaintiff.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

*Am. Compl*., Dkt. 10, at 2–5. The comments Goodman made to (or about) Plaintiff included the following:

- "Why are you showing me your butt crack, are you a faggot?" *Id*. at 5.

- "Take that dick out of your mouth so I can understand what you are talking about." *Id*.

- "[I]s your jaw okay from sucking dicks over the weekend, because you are talking funny today." *Id*. at 6.

- "Why is [another inmate's] head between your … legs?" *Id*. at 7.

- "Is that cum on [Plantiff's] goat-tee from you [another inmate]?" *Id*.

- "[P]ut [your] pants back on if you guys are done jerking and sucking each other off." *Id*.

- "Why are you wearing tight jean pant today, are you selling your ass for commissary this week?" *Id*. at 8.

(verbatim, except capitalization regularized).

When Warden Barlow-Hust was made aware of the sexual comments made by Goodman, Barlow-Hust said that "she d[id] not have time for this" and that "she was busy handling other priorit[ies]." *Id*. at 9–10.

Goodman also allegedly made derogatory comments toward Plaintiff about Plaintiff's hearing and speech impediments, such as, "It doesn't take a stupid retard three days to replace a chain link on the seeder." *Id*. at 10. Goodman also yelled at Plaintiff, and when Plaintiff responded calmly, Goodman stated, "That is it we are done for the day." *Id*.

Plaintiff then told Goodman that Plaintiff planned to file "a complaint with IDOC Administration Office regarding the sexual and discrimination harassing comments." *Id*. Goodman then terminated Plaintiff from his job at the Waste Water Treatment facility. *Id*.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

Defendant Funk was present when Goodman made many of the comments to or about Plaintiff, but Funk purportedly "turned a blind eye" and did not intervene to stop the harassment until February 2025. *Id.* at 11. Once Goodman's conduct was reported, an IDOC investigation began. Goodman was placed on administrative leave before eventually being terminated from his position. *Id.* at 12.

Plaintiff sues Goodman, Funk, Barlow-Hust, and IDOC Director Bree Derrick. Plaintiff claims that Defendant Goodman's "sexual verbal abuse and discriminatory comments" violated (1) the Eighth Amendment, (2) the Equal Protection Clause of the Fourteenth Amendment, (3) IDOC policy, (4) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* ("RA"), and (5) the Prison Rape Elimination Act, 34 U.S.C. § 30302 *et seq.* ("PREA"). *Am. Compl.* at 13–15. Plaintiff also asserts that Defendants Funk, Barlow-Hust, and Derrick violated these constitutional, statutory, and administrative provisions by failing to intervene to stop Goodman's misconduct. Plaintiff seeks monetary and injunctive relief. *Id.* at 15.

**3.    Discussion**

### *A.    Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an

affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,]

the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

           i.      <u>Eighth Amendment Claims</u>

Verbal harassment, abuse, and threats, without more, generally are not sufficient to

state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 137–39 (9th Cir. 1987) (allegations that correctional counselor told plaintiff that he would transfer him to a higher custody status unit if he tried to go to the law library and that he would be sorry if he filed a class action suit were not actionable under § 1983); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (allegations that defendant "personally informed plaintiff that if he never cut his hair and shaved his beard that he would lose what class he had and would have a bad time at Wrightsville" and that defendant "verbally abused and threatened him for filing grievances" did not constitute a constitutional violation); *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) ("While twenty-two officers armed with sticks and threatening demeanor may arguably be excessive, we must, in the absence of physical abuse, concur with the lower court's dismissal. The alleged conduct, absent more, cannot be said to rise to the level of conduct which shocks the conscience.") (internal quotation marks omitted).

Inmates do have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The United States Supreme Court has emphasized, however, that the Eighth Amendment should be reserved for serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by prison officials' "deliberate indifference to the inmates' health or safety." *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) (internal quotation marks omitted. Further, in *McKune v. Lile*, the Court noted that, in determining whether a constitutional claim lies, "[c]ourts must decide whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it

does not." 536 U.S. 24, 41 (2002) (Fifth Amendment context).

Although sexual harassment can constitute calculated harassment prohibited by the Eighth Amendment, such harassment must generally include a physical sexual component. *See Austin v. Terhune*, 367 F.3d 1167, 1171–72 (9th Cir. 2004) ("[The defendant] was in an elevated, glass-enclosed control booth when he exposed himself to [the plaintiff,] and this isolated incident lasted for a period of no more than 30–40 seconds. [The defendant] never physically touched [the plaintiff]. In the light of these facts, the district court properly concluded that this incident was not sufficiently serious to constitute an Eighth Amendment violation."). Sexual harassment that is entirely verbal—although "inappropriate and unacceptable"—does not rise to the level of a constitutional violation. *Benjamin v. Stevens Cnty.*, 839 F. App'x 100, 101 (9th Cir. 2020) (unpublished) (no Eighth Amendment violation where defendant made "sexually inappropriate statements" on "a daily basis," touched inmate on the thigh without consent, and put a hand on inmate's back while speaking to her); *Hill v. Rowley*, 658 F. App'x 840, 841 (9th Cir. Aug. 16, 2016) (unpublished) ("The district court properly dismissed [plaintiff's] [Eighth Amendment] failure-to-protect … claims based on defendant['s] … comments to [plaintiff] because verbal harassment is insufficient to state a constitutional deprivation under § 1983.") (citing *Oltarzewski*, 830 F.2d at 139). And an isolated incident of sexual harassment does not constitute cruel and unusual punishment unless it is severe. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (no Eighth Amendment violation where officer "approached [an inmate] while [the inmate] was still on the toilet, rubbed his thigh against [the inmate's] thigh, began smiling in a sexual [context], and left the cell laughing."); *Somers v. Thurman*,

109 F.3d 614, 616, 623-24 (9th Cir. 1997) (no Eighth Amendment violation where female officers conducted visual body cavity searches of male inmates and watched the inmates shower, all while pointing at the inmates, gawking, and joking among themselves).

The Amended Complaint fails to state a plausible Eighth Amendment claim of sexual harassment against any Defendant. Plaintiff does not allege that Goodman physically touched Plaintiff in a sexual way—rather, he complains of entirely verbal sexual comments. *See Austin*, 367 F.3d at 1171–72. Though Goodman's alleged comments were unprofessional and inappropriate, they do not constitute cruel and unusual punishment. Because Goodman's conduct did not violate the Eighth Amendment, Plaintiff's claims against the other Defendants—which are based on their failure to stop Goodman's conduct—are also implausible.

ii.    Equal Protection Claims

The Fourteenth Amendment guarantees equal protection of the law. The purpose of the Equal Protection Clause is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Even where similarly situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id.*; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to rational basis review. *Id.* In a rational basis analysis, the relevant inquiry is whether the defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). A plaintiff can prevail under rational basis review only if (1) the plaintiff is similarly situated with persons who are treated differently by a governmental official, and (2) the official has no rational basis for the disparate treatment.

The Amended Complaint fails to state a plausible equal protection claim. Like the Eighth Amendment, the Equal Protection Clause is not violated by purely verbal sexual

harassment, without any sexual touching. *Hill*, 658 F. App'x at 841 ("The district court properly dismissed [plaintiff's] … equal protection claims based on defendant['s] … comments to [plaintiff] because verbal harassment is insufficient to state a constitutional deprivation under § 1983.") (citing *Oltarzewski*, 830 F.2d at 139); *cf. id.* ("[The plaintiff] sufficiently alleged that [the defendant] committed an unwanted touching of [the defendant's] person and did so intentionally to discriminate against him to state … equal protection claims."). Accordingly, Plaintiff may not proceed on his equal protection claims.

### iii.    Claims of Violations of IDOC Policies

Plaintiff's claim that Defendants' conduct violates IDOC policies is not cognizable—meaning it cannot be heard—in this action because violations of state laws or policies do not support a § 1983 claim. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (stating that, as long as minimum constitutional requirements are met, a prison need not comply with its "own, more generous procedures"), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) ("[Section 1983] is thus limited to deprivations of *federal* statutory and constitutional rights. It does not cover official conduct that allegedly violates *state* law.") (relying on *Baker v. McCollan*, 443 U.S. 137, 146 (1979)). "It is not the function of this Court to review regulations established by prison authorities unless a constitutional violation is presented." *Lowrey v. Walton Cty. Sheriff's Dep't*, No. 3:07-CV-121-CDL, 2008 WL 660332, at *3 (M.D. Ga. Mar. 5, 2008) (unpublished). Thus, Plaintiff's claims based on IDOC policies are implausible.

**B.    ADA and RA Claims**

The ADA and the RA generally prohibit discrimination on the basis of an individual's disability. They are congruent statutes in purpose and application. *See Clark v. California*, 123 F.3d 1267, 1270 (9th Cir. 1997). The evidence required for bringing an RA claim is the same as that for an ADA claim, with the additional requirement that the disability discrimination must be committed by an entity receiving federal financial assistance. *See* 29 U.S.C. § 794(a). Therefore, the standards of an ADA claim also apply to an RA claim.

In order to proceed with an ADA claim, a plaintiff must plausibly allege (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Under the ADA and RA, a governmental entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

By statutory definition, a Title II ADA claim must be brought against the state or state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity for states for conduct that actually violates the Fourteenth Amendment); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Claims against individuals asserted under the ADA are treated as official capacity claims because no individual capacity claims exist under the statute. *See, e.g., Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).

The Amended Complaint fails to state claim upon which relief may be granted under the ADA or the RA. Not being subjected to verbal harassment by IDOC officers is not a "service[], program[], or activit[y] of a public entity" under these statutes. 42 U.S.C. § 12132. Therefore, Plaintiff has not plausibly alleged that he was discriminated against in violation of the ADA or the RA.

### C.    PREA Claims

PREA "was enacted to address the problem of rape in prison by creating and applying national standards to prevent, detect, and respond to prison rape, and by ensuring compliance of state and federal prisons by conditioning eligibility for federal grant money on compliance with the standards." *Barber v. Cox*, No. 1:17-CV-00318-BLW, 2019 WL 454090, at *1 n.1 (D. Idaho Feb. 5, 2019) (unpublished).

However, PREA does not provide a private right of action enforceable by individual prisoners. *Id.*; *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. April 15, 2015) (per

curiam) (unpublished) (collecting cases); *Hill v. Hickman Cnty. Jail*, 2015 WL 5009301
(M.D. Tenn. August 21, 2015) (unpublished) (dismissing PREA claim for lack of private
right of action); *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19,
2014) (unpublished) ("[T]his Court concludes that the PREA creates no private right of
action."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013)
("There is nothing in the PREA that suggests that Congress intended it to create a private
right of action for inmates to sue prison officials for non-compliance to the Act.").
Accordingly, Plaintiff's PREA claims are implausible and should be omitted from any
second amended complaint.

### D.    State Law Claims

Plaintiff may also be attempting to raise a claim under Idaho state law, though the
precise claim he refers to is unclear. *See Am. Compl.* at 13–14 (alleging that Goodman's
conduct "constituted the tort of verbal abuse patterns of sexual assault and battery under
the law of Idaho by violating the PREA and IDOC policy guideline"). Because the
Complaint fails to state a federal claim upon which relief may be granted, the Court
declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28
U.S.C. § 1367(c). If Plaintiff files an amended complaint, and if the amended complaint
states a plausible federal claim, the Court will address any state law claims and reconsider
the issue of supplemental jurisdiction.

### 4.    Standards for Second Amended Complaint

If Plaintiff chooses to further amend the Amended Complaint, Plaintiff must
demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's

constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. § 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory provision Plaintiff alleges has been violated; (6) facts alleging the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as

non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amendment should be clearly designated as the "Second Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files a second amended complaint, Plaintiff must also file a "Motion to Review the Second Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.    Plaintiff's Motion to File an Amended Prisoner Complaint (Dkt. 9) is GRANTED, and the Court has reviewed the Amended Complaint under 28 U.S.C. § 1915A.

2.    The Amended Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file a second amended

complaint as described above. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[1]

3.    If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A.

4.    Because an amended complaint is required for Plaintiff to proceed, Plaintiff's Motion for Appointment of Counsel (Dkt. 4) is DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: February 4, 2026

David C. Nye
U.S. District Court Judge

---

[1] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g). *Spencer v. Barajas*, 140 F.4th 1061, 1066 (9th Cir. 2025).